**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Christopher L. Giordano, a Task Force Officer (TFO) with the Drug Enforcement Administration ("DEA"), United States Department of Justice, being first duly sworn, depose and state underoath as follows:

1.      This affidavit is made in support of a criminal complaint against Patrick GARCAR (hereinafter "GARCAR"), charging that on or about April 28, 2026, GARCAR committed the following federal offense: possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B);

**TRAINING AND EXPERIENCE**

2.      TFO Giordano is an employee of the City of Cleveland Heights Police Department since November 30, 1998, assigned to the City of Cleveland Heights Detective Bureau. TFO Giordano is currently a Task Force Officer with the DEA and has been so employed since April of 2009, within the meaning of Section 878(a) of Title 21, United States Code, that is an officer who is empowered by law to conduct investigations, make arrests, execute search warrants, and seize property in connection with violations of Title 18, United States Code and Title 21, United States Code.   TFO Giordano has participated in the preparation of affidavits in support of numerous search and arrest warrants for violations of state drug laws contained in Ohio Revised Code Chapter 2925, and federal drug laws contained in Title 21, United States Code, as well as in the execution of the same.  In addition, Affiant has, as a TFO with DEA, made seizures of contraband, conveyances, currency, drug paraphernalia, and firearms possessed or used in relation to violations of Ohio Revised Code Chapter 2925 and Title 21, United States Code, Section 841. TFO Giordano has successfully conducted investigations that have resulted in the arrest of drug traffickers and the seizure of quantities of drugs and drug-related proceeds.  TFO Giordano has

1

further conducted surveillance operations of drug traffickers and has interviewed numerous persons personally involved during controlled purchases of narcotics.  Through this training and experience, TFO Giordano has become familiar with, and has gained a thorough understanding of the methods, manner and means used by individuals engaged in the unlawful manufacturing, trafficking, and use of controlled substances. TFO Giordano has been employed by the Cleveland Heights Police Department ("CHPD") since 1998.  TFO Giordano served as a patrolman, investigator, and detective for CHPD.  Since April 2009, TFO Giordano has been assigned as a TFO for the DEA, Cleveland Resident Office.   During his time with the DEA, TFO Giordano has received training at the DEA Basic Narcotics School in Columbus, Ohio, regarding the identification of narcotic substances and the operation of drug trafficking organizations. TFO Giordano has received a Master of Science Degree in Administration of Justice from Mercyhurst College during his law enforcement career. TFO Giordano has completed further training while employed as a DEA TFO in the fields of basic telecommunications exploitation, electronic surveillance, asset forfeiture, money laundering, and narcotics interdiction.

3.     During his career, TFO Giordano has participated in many investigations involving the organized manufacture, possession, and distribution of illegal drugs and has made numerous arrests for drug related offenses.  His experience with CHPD and DEA includes, but is not limited to: physical and electronic surveillance, analyzing pen register and telephone toll data, interviewing witnesses, drafting and executing search warrants seeking seizure of illegal drugs and other evidence of drug violations, acting in an undercover capacity to purchase controlled substances, supervising the purchases of controlled substances by undercover agents and informants, debriefing numerous persons arrested and convicted of drug trafficking offenses about their illegal activity, assisting in drafting and executing Title III warrants for the interception of communications, and supervising other officers and detectives during Title III investigations.

Further, TFO Giordano made seizures of contraband, conveyances, currency, drug paraphernalia, and firearms possessed or used in relation to violations of Title 21, United States Code, Section 841, that familiarized him with the practices of drug traffickers.

4.   TFO Giordano has gained knowledge that members and co-conspirators of complex drug trafficking organizations utilize various veiling methods and engage in activities in efforts to thwart the efforts of law enforcement personnel. Members of drug trafficking organizations commonly utilize multiple cellular phones and subscribe said phone numbers in the names of fictitious people or relatives. Members also utilize numerous vehicles, and exchange vehicles at irregular intervals, with said vehicles being registered to relatives, fictitious companies, or in the names of invented individuals. I also have experience recognizing members of drug trafficking organizations engaging in driving maneuvers that are designed to assist criminals in the possible identification of law enforcement personnel who are engaging in surveillance operations. I also know drug traffickers use multiple residences in an effort to thwart law enforcement by separating the fruits of the crimes, to different locations. I know it is common for drug traffickers to use apartments, to blend in with multiple other residences, making it difficult for law enforcement to locate the location. All these activities are done in the hope that criminal activities will be disguised.

5.   Based on my training and experiences in other investigations, I have conducted numerous analyses of billing and toll records for telephones used by drug traffickers. I know drug trafficking is often furthered by using multiple cellular phones, multiple insulated contacts, and pre-paid cellular phones, which is also known as compartmentalization. The use of the telephones in this manner is designed to help avoid detection by law enforcement.

6.   I know based upon training and experience that drug trafficking and money laundering organizations routinely use a number of other operational techniques, designed and

3

implemented to achieve two goals: first, the successful distribution of controlled substances and the subsequent collection of the proceeds of that illegal activity; and second, the minimization of the exposure of organization members, particularly those operating in management roles, from investigation and prosecution by law enforcement.

7.     I have participated in multiple drug cases, some of which have been Title III investigations involving drug trafficking activities and have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.

8.     I also know from training and experience that drug traffickers periodically change, or "drop," their telephones and/or telephone numbers to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

9.     Unless otherwise noted, wherever in this Affidavit, I assert a statement was made, my observations provided the information, or another special agent or law enforcement officer, or witness who had either direct or hearsay knowledge of that statement to whom the I or others have spoken or whose reports I have personally read and reviewed. This Affidavit does not contain every piece of information known to Affiant and otherinvestigators, but rather only information sufficient to establish probable cause to support the requested warrant.

**<u>PROBABLE CAUSE</u>**

10.      In summary, on April 28, 2026, at approximately 8:36 p.m., in the Northern District of Ohio, Eastern Division, Ohio State Highway Patrol (OSHP) Trooper Andre Giordon, conducted a traffic stop for a speeding violation on a 2020 dark blue BMW SUV, bearing Ohio license plate, KHH6487, on I-271 near Macedonia, Ohio. The vehicle is registered to a Kirk Knepper, later determined to be a vehicle used by Mr. Knepper for driving for Uber. During the traffic stop, Trooper Giordon further determined the rear occupant of the vehicle to be Patrick GARCAR (DOB/04-16-1997) and later observed grey and black bags near GARCAR's seating location.  OSHP Trooper Lewis Marino assisted Trooper Giordon during the traffic stop at this time. During the traffic stop, Trooper Giordon deployed his State of Ohio certified K-9 Jax around the perimeter of the Uber vehicle for further open air. K-9 sniff. As witnessed by Trooper Giordon, K-9 Jax then alerted positive for the positive for the presence of narcotics within the Uber vehicle.

11.      In summary, Trooper Giordon, assisted by Trooper Marino, then conducted a probable cause search of the Uber vehicle, and the following items of evidentiary value were recovered in a grey and black bag(s) belonging to GARCAR and or on his person:

- One (1) brick-shaped, (approximately 1114.0 grams) white powdery substance, wrapped in black electric tape, which field tested positive for the presence of cocaine, found in a black bag near GARCAR

- One (1) clear plastic bag, containing approximately 100 orange pills, suspected to be methamphetamine pills, based on training experience, lab results pending

- One (1) clear plastic bag containing approximately 25 white pills, suspected to be Xanax Pills, based on training experience, lab results pending

- One (1) brown and clear plastic bag, containing approximately 100 blue

pills, lab results pending

- One (1) Farmapram brown bottle, with suspected residue, lab results pending

- One (1) red pill contained in foil packaging, lab results pending

- One (1) plastic bag containing white and purple powdery residue

- Undetermined amount of US Currency, Cash, to be determined by an independent financial institution

- One (1) iPhone in dark blue case with sticker on the back

- One (1) iPhone in orange case

- One (1) grey BLU smartphone

- One shipping label, bearing the name Pat GARCAR, 1206 North 4th Street, APT 424, Columbus, Ohio, found in black bag near GARCAR, which contained

- One blue letter, bearing addressee Pat GARCAR, 1206 North 4th Street, APT 424, Columbus, Ohio.

12. In summary, Trooper Giordon then gave Patrick GARCAR his Miranda Rights upon detaining GARCAR on the traffic stop. Trooper Giordon then contacted DEA Investigators to further interview GARCAR. The interview was then concluded without incident. OSHP Troopers then transported GARCAR to the Cuyahoga County Jail.

## CONCLUSION

13.      Based on the facts set forth in this affidavit, I submit there is probable cause to believe that on or about April 28, 2026, in the Northern District of Ohio, Patrick GARCAR committed the offense of possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B),  Affiant, therefore, requests that this Court issue a criminal complaint and arrest warrant for Patrick GARCAR.

*TFO Christopher L. Giordano*

Christopher L. Giordano
Task Force Officer
Drug Enforcement Administration

This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per Federal Rule of Criminal Procedure 4.1 on this __29th__ day of April, 2026.

*Carmen Henderson*

Carmen E. Henderson
UNITED STATES MAGISTRATE JUDGE

7